**UNITED STATES of America, Plaintiff,**

v.

**Bruce OAKLEY d/b/a Bruce Oakley Grain Co.; and Bruce Oakley, Inc., Defendants.**

**No. LR C 78 247.**

United States District Court, E. D. Arkansas, W. D.

Jan. 31, 1980.

Fletcher C. Lewis, Johnson & Lewis, Ltd., Little Rock, for defendants.

Walter B. Riddick, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

## MEMORANDUM AND ORDER

OVERTON, District Judge.

Under 28 U.S.C. 1345, this Court has jurisdiction over this action to which the United States is a party. The parties have agreed that the issues presented may be decided on the record and have waived a trial. The parties have submitted a stipulation of facts, exhibits and affidavits.

The defendant, Bruce Oakley,[1] purchased approximately 450 bushels of soybeans from a farmer, Alfred Langer, on January 4, 1978. The purchase price was $2,606.38, however, a check was issued to Mr. Langer in the amount of $2,037.40. The difference,

---

1. The pleadings in this action name Bruce Oakley d/b/a Bruce Oakley Grain Company and Bruce Oakley, Inc. as defendants. The parties have stipulated that if judgment is entered against the defendants it should be entered against Bruce Oakley and Bruce Oakley, Inc., jointly and severally. For the sake of clarity in this opinion, the Court will refer to the defendant Bruce Oakley when referring to either of the defendants.

$568.98, was withheld by the defendant as payment for a debt owed by Mr. Langer to the defendant.

The soybeans were collateral for a loan obtained by Mr. Langer from the United States Department of Agriculture through the Farmers Home Administration (FHA). The crops were grown on land belonging to Alois Ledwig in White County, Arkansas. On March 30, 1977, Langer executed a security agreement and the FHA filed a financing statement in the office of the Circuit Clerk and Recorder of White County, Arkansas. A principal balance of $5,193.82 and interest of $448.06 remain outstanding on the loan.

The United States filed this action alleging that the defendant had converted the soybeans to the extent payment was withheld and seeking damages in the amount of $568.98 plus interest from the date of the alleged conversion. The defendant claims that the government's security interest is not perfected because the description of collateral in the financing statement is insufficient to give a third party notice of the security interest.

In both the security agreement and financing statement the description of collateral is as follows:

Item 1. All crops, annual and perennial, and other plant products now planted, growing or grown, or which are hereafter planted or otherwise become growing crops or other plant products (a) within the one-year period or any longer period of years permissible under State law, or (b) at any time hereafter if no fixed maximum period is prescribed by State law, on the following described real estate:

| Farm(s) or Other Real Estate Owner | Approximate No. of Acres | County and State | Approximate Distance and Direction from a Named Town or other Description |
| --- | --- | --- | --- |
| Alois Ledwig | 260 | White, Arkansas | 3½ Miles Southeast of McRae |

In *United States v. Kimbell Foods*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979), the United States Supreme Court laid to rest the question of what law is to be applied to conflicting commercial claims when the federal government is one of the claimants. The Court held that federal law determines the rights of the federal government arising under voluntary federal lending programs, and that absent a Congressional directive the federal courts are free to fashion the federal rule. *Id.* at 727, 99 S.Ct. at 1458.

In formulating the federal rule, however, the Court held that "the prudent course is to adopt the readymade body of state law as the federal rule of decision . . . ." *Id.* at 740, 99 S.Ct. at 1465. The Court expressly rejected the federal government's argument that tailoring its loan programs to individual state law would unduly burden the lending programs, thus requiring a uniform federal rule. *Id.* at 729–730, 99 S.Ct. at 1459–1460.

■ Thus, the description of collateral in the instant case must stand or fall under Arkansas law. The pertinent provisions of the Uniform Commercial Code as adopted in Arkansas as codified in *Ark.Stat.Ann.* § 85–9–101 et seq. (Add.1961 and Cum. Supp.1979), and Arkansas Supreme Court decisions thereunder form the basis for a decision.

*Ark.Stat.Ann.* § 85–9–402 provides the formal prerequisites of a financing statement. In regard to financing statements concerning security interests in crops, the statute provides as follows: "When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned." *Ark.Stat.Ann.* § 85–9–402(1).

The statutory test for determining the sufficiency of a description of property un-

der Article 9 of the Uniform Commercial Code is as follows: "For the purposes of this Article [chapter] any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." *Ark.Stat. Ann.* § 85–9–110 (Add.1961).

In *Piggot State Bank v. Pollard Gin Co.,* 243 Ark. 159, 419 S.W.2d 120 (1967), the Arkansas Supreme Court, for the first time under Article 9 of the Uniform Commercial Code, determined the sufficiency of a real estate description. In that case, a suit for conversion of crops similar to the present case, the description of collateral in the financing statement was as follows:

> CROPS. All of the following crops to be planted or growing within one year from the date hereof on the lands hereinafter described: 7 acres of cotton and 53 acres of soybeans to be produced on the lands of S. E. Karnes; 11.6 acres of cotton and 50 acres of soybeans to be produced on the lands of Mary Gilbee; 4½ acres of cotton and 11 acres of soybeans to be produced on the lands of George Nixon; all of the above crops to be produced in Clay County, Arkansas during the year 1976.

*Id.* at 160, 419 S.W.2d at 121.

The Court held the description to be insufficient. In addition to quoting from the statutory test for sufficiency set out above, the Arkansas Supreme Court referred to the Commissioners' Comment to that section which states: "The test of sufficiency of a description laid down by this Section is that the description do the job assigned to it—that it make possible the identification of the thing described." The Court noted that neither the documents nor the proof at trial answered questions concerning how much cotton was grown on the lands of S. E. Karnes. Although commenting that precode cases would not be controlling, the Court compared their decision to holdings in earlier cases that " 'a mortgage of a specified number of articles out of a larger number will not be allowed to prevail, unless it furnishes the data for separating the property intended to be mortgaged from the

mass.' (citations omitted)" *Id.* at 161, 419 S.W.2d at 121.

While at first glance *Piggot State Bank* would appear to render the description in the present case insufficient, this Court believes the descriptions are distinguishable. *See United States v. Big Z Warehouse,* 311 F.Supp. 283 (S.D.Ga.1970). The "carving out" of acreage found in the earlier case is not present here. The description under consideration covers "all crops" to be grown on the land in question. It could be inferred from the Arkansas Supreme Court's decision that a detailed legal description is necessary in a financing statement. This has never been, and does not appear to be, the law in Arkansas. *See Blankenship v. Modglin,* 177 Ark. 388, 6 S.W.2d 531 (1928); *Lesser-Goldman Cotton Company v. Hembree,* 163 Ark. 88, 259 S.W. 5 (1924).

In a later case dealing with the description of inventory, *Security Tire & Rubber Co. v. Hlass,* 246 Ark. 1113, 441 S.W.2d 91 (1969), the Court expanded on its reading of *Ark.Stat.Ann.* § 85–9–110. Relying on Meek, *Secured Transactions Under The Uniform Commercial Code,* 18 Ark.L.Rev. 30 (1964) and authorities cited therein, the Court stated: ". . . the description need not be such as would enable a stranger to select the property . . . a description is sufficient which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property." *Security Tire & Rubber Co. v. Hlass, supra* at 1117, 441 S.W.2d at 94. Cf. *Blankenship v. Modglin,* 177 Ark. 388, 6 S.W.2d 531 (1928) (description of crop mortgage upheld under similar test).

The defendant urges that a more recent Arkansas case, *The People's Bank v. Pioneer Food Industries, Inc.,* 253 Ark. 277, 486 S.W.2d 24 (1972) controls the instant case and renders the description insufficient. This Court does not agree. In *Pioneer Food,* the description in question contained a general description of crops and a specific legal description as to three tracts. The legal description was erroneous in that three additional tracts were omitted. In holding that the description was inadequate as to the crops grown on the omitted tracts,

the Arkansas Supreme Court expressly stated that the question as to the sufficiency of the general description standing alone would remain unanswered. Instead, the Court determined that the specific description restricted and controlled the more general description. *Id.* at 280, 486 S.W.2d 24.

Applying these principles to the facts in the instant case, this Court finds that under Arkansas law the description of collateral is sufficient. "The object of the Code is to dispense, so far as possible, with long and laborious property descriptions." Meek, *Secured Transactions Under The Uniform Commercial Code*, 18 Ark.L.Rev. 30, 35 (1964). Nothing in the Arkansas statutes or case law indicates that a full legal description of real estate is required in a financing statement covering crops. The information in the financing statement, together with inquiry suggested therein, would enable a stranger to the transaction, such as the defendant, to identify the crops. The filing of the financing statement perfected the government's security interest in Mr. Langer's crops. The defendants converted the crops to the extent payment was withheld and are liable to the government for the sum of $568.98 with interest thereon from the date or the conversion, January 4, 1978. Judgment will be entered accordingly.