**In the Matter of Robert Lynn YOUNCE and Nancy Lee Younce, Debtors.**

**Bankruptcy No. 84–C–1486.**

United States District Court, E.D. Wisconsin.

Dec. 19, 1985.

Jack Aulik, Aulik, Brill & Eustice, S.C., Sun Prairie, Wis., for appellant Farmers Credit Co., Inc.

Michael F. Dubis, Waterford, Wis., for debtors Robert and Nancy Younce.

## DECISION AND ORDER

WARREN, District Judge.

The primary question presented in this bankruptcy appeal is whether the description in a security agreement and related financing statement of certain real estate on which the debtors' crops are located is sufficient under Wis.Stat. § 409.110 to create a perfected security interest in those crops. The bankruptcy court, 44 B.R. 102, Judge Charles N. Clevert presiding, held that the description of the real estate was not sufficient because a third party, aided only by the security instruments and the further inquiries they suggested, could not reasonably identify the land on which the crops are located (Bankruptcy Court's Memorandum Decision, p. 6). This Court notes that the question seems very close, but, on balance, it disagrees with the bankruptcy court's conclusion and will reverse its decision.

The facts in this case are undisputed, the only issues being the legal sufficiency of the description of the real estate in question and the debtors' standing to contest that description. The description of the real estate is contained in both a security agreement and a financing statement, the latter of which was properly filed and indexed in the Office of the Register of Deeds for Walworth County, Wisconsin. The security agreement granted the appellant, Farmers Credit Company, Inc. (Farmers), a security interest in the crops of the debtors, Robert and Nancy Younce, to secure a loan in excess of $182,000.00.

The description of the collateral and real estate as stated in the security agreement is as follows:

All crops growing or to be grown by Debtor, and the products of such crops, on property described as: 487 acres, Sections 16, 21, 22, 18, 1, 12, 23, 25, 26 & 27, T4N, R17E, Troy Township, & 86 acres in Section 6, T4N, R18E, East Troy

Township, all in Walworth County, State of Wisconsin.

A similar description of the collateral and real estate is contained in the financing statement, the pertinent part of which reads as follows:

ALL CROPS NOW GROWING OR TO BE GROWN ON: 487 acres, Sections 16, 21, 22, 18, 1, 12, 23, 25, 26 & 27, T4N, R17E, Troy Township, & 86 acres, Section 6, T4N, R18E, East Troy Township, all in Walworth County, State of Wisconsin.

The description of the real estate as stated in these documents was provided to Farmers by the Debtors. While there is no dispute that the real estate description is not a legal one, Farmers contends that the description meets the requirements of Wis. Stat. § 409.110 and that, accordingly, Farmers has a valid, perfected security interest in the debtors' crops.

### A. Sufficiency of the Real Estate Description

Wis.Stat. § 409.203(1) provides, in pertinent part, that:

(1) ... a security interest is not enforceable against the debtor or 3rd parties with respect to the collateral and does not attach unless:

(a) The collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral and in addition, when the security interest covers crops growing or to be grown or timber to be cut, a description of the land concerned; ...

A security interest, once created, may be perfected by filing a financing statement. In a situation such as the present one, the requisites of a financing statement are set forth in Wis.Stat. § 409.402(1)(b), which provides, in relevant part:

(b) When the financing statement covers crops growing or to be grown, the statement must also contain a description of the real estate concerned ...

The standard for real estate descriptions in security agreements and financing statements is provided in Wis.Stat. § 409.110:

> For the purposes of this chapter any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described.

The heart of the present dispute really concerns the meaning of the term "reasonably identifies" as it is used in § 409.110. While this term is, unfortunately, somewhat vague, the language is not unusual or unique. It is taken directly from § 9–110 of the Uniform Commercial Code and is similar to that found in numerous state statutes specifying the requirements for real estate descriptions. Thus, while there appears to be only one case from a Wisconsin court concerning this issue, decisions on point from courts in other states that have adopted the UCC must be regarded as very persuasive.

■ There is general agreement among the courts that have addressed this issue that the reasonable identification of real estate on which crops are grown does not require a legal description of that real estate. *See, e.g., United States v. Oakley,* 483 F.Supp. 762, 764 (E.D.Ark.1980); *In Re McMannis,* 39 B.R. 98, 100 (Bank.Ct.D. Kan.1983); *In Re Lovelady,* 21 B.R. 182, 184 (Bank.Ct.Ore.1982); *Chanute Production Credit Assn. v. Weir Grain Supply, Inc.,* 210 Kan. 181, 499 P.2d 517, 10 U.C.C. R.S. 1351, 1353 (1972). In the Wisconsin case referred to above, the court declared that a metes and bounds description was not necessary. *Production Credit Assn. v. Columbus Mills,* 22 U.C.C.R.S. 228, 233 (Wis.Cir.Ct., Dane Cty.1977). The consensus seems to be that, in order to sufficiently identify the location of crops used as collateral, a real estate description should include the name of the record owner, the approximate number of acres on which the crops are grown, the county in which the land is located, and the direction and distance of the real estate from the nearest town or city. *See United States v. Oakley,* 483 F.Supp. 762 (E.D.Ark.1980); *McMan-*

*nis,* 39 B.R. at 100; *Lovelady,* 21 B.R. at 184.

■ The description of the real estate in this case included the approximate number of acres on which the crops were grown as well as the county and state in which the land is located. The description did not include the direction and distance to the nearest town, but substituted instead the section, range and township coordinates. The description did not contain any reference to the record owner of the land.

The Court considers the latter omission to be insignificant in this situation since the collateral belongs to tenant farmers and the financing statement is indexed under their name. As for the substitution of the section, range and township coordinates in place of the approximate distance to the nearest town, the Court opines that the "distance" description is far less preferable than the alternative used here. Not only is there more than one way to measure distance to the nearest town (i.e., as the crow flies or as the third party searcher travels), but some portions of the acreage will be substantially closer to the town than others. Depending upon one's point of departure and the route taken, this "distance" guideline could yield widely varying results.

Instead of pointing out the comparatively superior aspects of the section/range/township description over the "distance to the nearest town" approximation, the bankruptcy court focused its concern on the fact that the crops in question were grown on a total of 573 acres spread over eleven sections. Since each section contains 640 acres, the court concluded that "(t)here is no way that a third party, aided only by Farmers' security instruments and the inquiries they suggest, could reasonably identify the land where the Younces' pledged crops are located." (Bankruptcy Court's Decision, p. 6).

The language quoted above from the bankruptcy court's decision was based on statements found in *Oakley, Security Tire & Rubber Co. v. Hlass,* 246 Ark. 1113, 441

S.W.2d 91 (1969), and *Production Credit.* In *Oakley,* quoting *Security Tire,* 246 Ark. at 1117, 441 S.W.2d 91, the court stated that:

"... the description need not be such as would enable a stranger to select the property ... a description is sufficient which will enable third persons, aided by inquiries which the instrument itself suggests, to identify the property."

483 F.Supp. at 764. The court in *Oakley* held that the real estate description in question was sufficient because it identified the owner, the approximate number of acres, the county and state wherein it was located, and the approximate distance and direction to the nearest town. *Id.*

In *Production Credit,* two financing statements were filed. Both identified the county, township, and section wherein the land was located. In addition, the first financing statement specified the record owner of the real estate, while the second specified the acreage. 22 U.C.C.R.S. at 232. The Dane County (Wisconsin) Circuit Court found the real estate description to be sufficient. *Id.* In so doing, the court stated that:

"The policy of the Wisconsin Uniform Commercial Code, Chapter 409, is to create and maintain a system of "notice filing" by which persons claiming an interest in collateral can make other interested persons aware of the existence of some claim and places the burden of determining the exact nature and extent of that claim on those interested."

22 U.C.C.R.S. at 232–233.

Based upon the fact situations and reasoning in *Oakley* and *Production Credit,* it is difficult to reconcile the holdings in those cases with the decision of the bankruptcy court in this matter. Except for the omission of the name of the record owner of the real estate, the significance of which the Court has already questioned, the real estate description in the present case is at least as detailed as those found to be sufficient in *Production Credit* and *Oakley.* Admittedly, the task of locating 573 acres of crops spread over eleven sections of land could be an onerous one. However, as the cases cited above clearly demonstrate, a real estate description is not intended to serve as the sole means by which a third party could locate and identify the collateral. Its purpose is to put an interested third party on notice of the existence of a claim. *Production Credit,* 22 U.C.C.R.S. at 232–233. The obligation then runs to the third party to conduct further inquiries suggested by the description of the collateral and real estate upon which it grows to determine its precise location.

The Court is convinced that the real estate description contained in the financing statement was sufficient to put an interested third party on notice of Farmers' claim and that, with reasonable further inquiry, the exact location of the collateral could have been discovered. Other than a complete legal description of the land, the Court fails to see how the description provided could have been any more detailed or helpful to the hypothetical third party. Accordingly, the Court finds the description of the collateral and real estate to be sufficient, and also finds that the appellant had a valid, perfected security interest in the debtors' crops. The decision of the bankruptcy court is reversed.

**B. Debtors' Standing**

Although the Court's decision with respect to the first issue renders inconsequential the question of the debtors' standing to contest the descriptions contained in the security agreement and financing statement, the Court will decide this issue for the sake of completeness in the event this decision is appealed. Farmers' position is that the debtors had actual knowledge of Farmers' security interest, and that any defect in the documents evidencing that interest was therefore meaningless as to the debtors. The debtors, on the other hand, point to Wis.Stat. § 409.203(1)(a), set forth above. This section provides, in essence, that a security agreement covering growing crops is not enforceable against the debtor or third parties unless, among

other things, a description of the land is given.

■ Clearly, under § 409.203(1)(a), the debtors would have standing to raise their objections if the documents evidencing Farmers' security interest contained no description of the real estate. The question raised is whether the debtors have standing to contest the *adequacy* of the description provided.

This question was not addressed by the bankruptcy court, and the parties have provided the Court with very little authority on the matter. The case cited by Farmers, *First Security Bank of Utah, N.A. v. Wright*, 14 U.C.C.R.S. 808 (Utah Sup.Ct. 1974), is but tangentially related to the issue at hand. That case stands for the proposition that the adequacy of a real estate description in a financing statement is irrelevant for the purpose of establishing lien priority when the party contesting the adequacy of the description had actual notice of the prior claim evidenced by the financing statement. *Id.* The case offers some guidance with respect to the debtors' standing to contest the description contained in the financing statement filed by Farmers, but offers no assistance on the question of their standing to challenge the enforceability of the security agreement as against themselves.

The Court agrees with Farmers that the purpose of the description of the collateral and real estate in the financing statement is to put third parties on notice of the existence of a claim. The adequacy of that description is at issue only when a third party raises the question in the context of a priority dispute.

The adequacy of a collateral and real estate description in a security agreement is a different matter, however, and is one in which the debtor might well have an interest. That interest would arise in a situation where there is some dispute between the debtor and the secured party as to the existence of the security interest or its scope; that is, the identity of the collateral covered. The requirements specified in § 409.203(1)(a) are intended to preclude

such disputes, as comment 3 to § 9–203 of the Uniform Commercial Code (from which § 409.203 was derived) demonstrates:

> One purpose of the formal requisites stated in subsection (1)(a) is evidentiary. The requirement of written record minimizes the possibility of future dispute as to the terms of a security agreement and as to what property stands as collateral for the obligation secured.

The question that has now evolved is whether the existence of some dispute between the debtors and the secured party as to the existence or terms of the security agreement is a prerequisite to the debtors' standing to challenge that agreement, and thus the secured party's entitlement to the collateral. There does not appear to be any such dispute extant in this case although, sitting as an appellate court, this Court does not stand apprised of all that ensued below. Regardless, the Court is of the opinion that a security agreement which does not fulfill the requirements of § 409.-203(1)(a) is inherently suspect and subject to challenge by the parties against whom it is sought to be enforced. The statute seems to imply as much, as the requirements for a valid agreement are clearly stated and no prerequisite to a debtor's standing to challenge the agreement is included.

Accordingly, the Court finds that the debtors do have standing to contest the sufficiency of the descriptions in the security agreement of the collateral and real estate on which it grows.

## CONCLUSION

For the foregoing reasons, the Court hereby REVERSES the decision of the bankruptcy court and finds that the descriptions of the collateral and real estate contained in the security agreement and financing statement are sufficient, and that the appellant therefore has a valid, perfected security interest in the debtors' crops.